**HAMBLEN COUNTY, et al.,**
**Plaintiffs-Appellants-Appellees,**

v.

**CITY OF MORRISTOWN, et al.,**
**Defendants-Appellants-Appellees.**

Supreme Court of Tennessee,
at Knoxville.

Aug. 10, 1983.

See also, 584 S.W.2d 673.

Richard C. Jessee, Morristown, for defendants-appellants-appellees.

Ernest R. Taylor, Morristown, for plaintiffs-appellants-appellees.

## OPINION

BROCK, Justice.

The City of Morristown claims the power, right and authority to operate and administer the new West High School and the renovated East High School for the education of high school students residing in the City of Morristown and in the County of Hamblen outside the city limits of Morristown. The county disputes this claim of the city and initiated this litigation to seek control, wholly or partially, of the high school system. The proper resolution of this dispute depends upon our construction of a contract entered into between the parties in 1965.[1] The Chancellor decreed that the city and the county had equal joint control of the high school system and his decree was affirmed by a majority of the Court of Appeals, Judge Franks dissenting. Both sides sought review in this Court of the judgments of the lower courts and review was granted.

I

Hamblen County operates a school system and the City of Morristown, the county seat of Hamblen County, operates a city school system and for many years prior to 1965 Hamblen County students who resided outside the city limits of Morristown had attended the Morristown High School by agreement with the city and without paying any compensation to the city for the attendance of "county" students. However, shortly prior to 1965 Morristown High School became so overcrowded that the city was faced with the threat of losing state and federal funds. Accordingly, the city set a date after which it could no longer accept county students in its high school. The city possessed adequate facilities for its own city high school students but the county did not possess adequate facilities for those high school students residing in the county but outside the city limits of Morristown. After lengthy negotiations between the city fathers and county fathers and after a referendum in which the voters of the county decided that the existing Morristown High School should be renovated and modernized and that a second high school should be constructed, the two sides, the City School Board and the Board of Mayor and Aldermen on the one hand and the County Board of Education and the legislative body of the county on the other hand,

1. The contract is found in the Appendix to this opinion.

entered into the 1965 contract above mentioned pursuant to T.C.A., § 49–401 *et seq.*[2]

In accordance with the 1965 contract a new high school, known as West High School, was constructed; the existing high school, now known as East High School, and which at the time was valued at approximately $1,000,000.00, was donated by the city to the high school project and was extensively renovated; these two schools, West High School and East High School, were to serve high school students throughout the county and they have been so used since the construction and renovation, approximately 15 years ago, the Board of Education of the City of Morristown operating and administering both schools. Under the 1965 agreement the county was to finance the renovation of the existing high school of the city and to pay for the construction of the new high school. It was further provided in the 1965 contract that the new high school facility was to be leased by Hamblen County "to the town of Morristown for such time and *so long as* the same is used for educational purposes for city and county students." And, it was further provided that students living within the county but outside the city limits of Morristown should have the right to attend either of the two high schools, "according to a zone plan approved by Morristown school commission" and that the county would make proportionate payments to the city for the county students thus attending the schools.

The parties operated as provided in the 1965 agreement until 1976 when the county set out to gain control of the new West High School and brought the instant litigation seeking to avoid the contract.

The overriding issue presented for our decision upon this appeal is: Who has the power to control these two high schools? In their briefs the parties have stated other contentions which we have considered but found to be either without merit or to be included within the overriding issue just stated.

Although the Chancellor conducted an evidentiary hearing to receive testimony concerning the intent of the parties during the negotiations leading up to the 1965 contract, he later determined that the reception of such testimony violated the parole evidence rule. His ultimate holding was that the 1965 contract "... is not ambiguous. It is merely silent on the issue of which board controls." His decree was that the city and county should share equally in the operation of the two high schools.

The majority of the Court of Appeals agreed with the result reached by the Chancellor but concluded that regardless of the intent of the parties as expressed by their testimony, there was never any agreement respecting control of the high schools:

"We reach this conclusion because a fair reading of the proof shows that it was the intent of the various witnesses that the city should operate—as some witnesses termed it—or administer—according to others—the high school system. This intent was never carried to fruition either by making it a part of the written contract or by an agreement in parole. It seems to us that it is one thing to intend that things should be done, and another to agree that it should."

Judge Franks dissented, reasoning that the cardinal rule of contract interpretation is to determine the intention of the parties and that in this case it was evident from the four corners of the contract itself that the parties intended that the city should retain control of both high schools. We are persuaded that the rationale and conclusion of the dissent is correct.

 The overriding purpose of the Court in interpreting the contract is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles. *Pearsall Motors, Inc.*

2. We note here that § 49–413, T.C.A., provides in pertinent part the following:
"Administration of joint schools—... The administration of schools established, maintained and operated pursuant to a contract entered into under §§ 49–410—49–414 may be placed under the board of education of the county, city or ... other persons and in such other manner as the terms of the said contract may provide."

v. *Regal Chrysler-Plymouth, Inc.,* Tenn., 521 S.W.2d 578 (1975); *Walker v. Tennessee Farmers Mut. Ins. Co.,* Tenn.App., 568 S.W.2d 103, 105 (1977); 17 Am.Jur.2d *Contracts* § 244 (1964). Another fundamental principle which is applicable here is stated in the *Restatement of Contracts,* § 236(b), as follows:

"The principal apparent purpose of the parties is given great weight in determining the meaning to be given to manifestations of intention or to any part thereof."

■ Also applicable here is a principle which has been aptly stated as follows:

"The court in interpreting words or other acts of the parties puts itself in the position which they occupied at the time the contract was made. In applying the appropriate standard of interpretation even to an agreement that on its face is free from ambiguity it is permissible to consider the situation of the parties and the accompanying circumstances at the time it was entered into—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning to be given to the agreement." *Restatement of Contracts,* § 235(d) and Comment.

Particularly pertinent here is the following principle:

"Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation and enforce it." 17 Am.Jur.2d *Contracts* § 255 (1964) at 649.

This principle was applied in this State by the Court of Appeals in *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn. App. 439, 232 S.W.2d 309, 316 (1949), the court stating:

"[A]n unexpressed obligation will be implied when it is clear that it was intended."

■ Applying the foregoing principle to this case, we conclude, as did Judge Franks, that certain language of the 1965 contract necessarily implies that the parties intended to vest control of these two high schools in the city and its school board.

The contract provided that the county would sell a bond issue to provide the funds necessary for building the new West High School and for renovating the old East High School and:

"The Hamblen County Board of Education shall acquire by purchase or condemnation the additional land necessary for the aforesaid second high school title to which land shall be made to Hamblen County. And the said land shall be leased to the Town of Morristown for such time and so long as the same is used for educational purposes for city and county students."

Clearly, it would be necessary for the county to lease the new facility to the city only if it were the intent of the parties that the city should control, administer and operate both high schools. Thus, paragraph V of the contract gave the power to supervise and direct the construction of the new school and renovation of the old school to the city.

Finally, we reach paragraph VI of the contract which would appear to dispel any doubt concerning the intention of the parties respecting control of the two high schools in question. That paragraph provides:

"Beginning with the school year 1966–67 *and thereafter* the high school students residing in that portion of Hamblen County lying outside the corporate limits of the Town of Morristown shall have the right to attend either high school, *according to a zone plan approved by Morristown School Commission.* In consideration of such services, Hamblen or Hamblen County School Board shall pay to the

Morristown School Commission or the Town of Morristown, for each such high school student so attending Morristown high schools, a sum of money equal to their proportionate share of the expenditures of local supplementary funds required per child to operate the Morristown high school systems over and above the amount provided by state and county under the minimum program required by the state." (Emphasis added.)

It is apparent from this provision that the city was to determine which students would attend which school and that the county would pay the city for those county students attending either school. If it were not intended by the parties that the city should operate and administer both schools, it certainly would not be necessary for the county to pay the city for the attendance of county students at these two high schools; clearly there would be no occasion for the county to pay the city for the attendance of county students at a high school operated and controlled by the county.

## II

█ The rule of practical construction is particularly applicable to this case. That rule, long recognized and applied in this jurisdiction, is that the interpretation placed upon a contract by the parties thereto, as shown by their acts, will be adopted by the court and that to this end not only the acts but the declarations of the parties may be considered. *Womble v. Walker,* 181 Tenn. 246, 181 S.W.2d 5 (1944); *American Barge Line Co. v. Jones & Laughlin Steel Corporation,* 179 Tenn. 156, 163 S.W.2d 502 (1942); *Sherman v. Cate,* 159 Tenn. 69, 16 S.W.2d 25 (1929).

The rule is stated in Section 235 of the *Restatement of Contracts* as follows:

"If the conduct of the parties subsequent to a manifestation of intention indicates that all of the parties placed a particular interpretation upon it, that meaning is adopted if a reasonable person could attach it to the manifestation."

█ Applying that rule, it is apparent from the conduct of the parties that they intended under the 1965 contract that the City of Morristown and its School Board should have the control and administration of these two high schools. Thus, for at least ten years following the execution of the contract in 1965 the parties conducted themselves as though the contract had expressly provided for the city to control and operate the high school system. Moreover, the county stated in its application for review in this case that it first "requested a voice in the administration of the high school system in December, 1975," ten years after the contract was executed. This litigation was not commenced by the county until 1976 after the city declined to agree to the demand of the county for joint control. Moreover, the county expressly stated in its complaint initiating this litigation that by the terms of the 1965 contract, "the plaintiffs in perpetuity, abrogate, give up and surrender the duty imposed upon them by law to—(1) operate, supervise, regulate and provide for the public education of the high school students of Hamblen County; . . ." and sought to have the contract declared null and void for that reason. The understanding and intent of the county is further shown by the minutes of the Hamblen County Board of Education meeting on June 7, 1965, wherein it was stated:

"The new school will be built cooperatively by the Board and the [Morristown School] Commission and will be operated by the Morristown School Commission with the county paying the difference in the expenditure per student in the Morristown City Schools over the expenditure in the Hamblen County Schools."

## III

█ The contention of the county that review by this Court has been foreclosed by concurrent findings by the two lower courts is without merit. The rule that concurrent findings of the Chancery Court and the Court of Appeals are binding on this Court, if there be any evidence to support them, applies only to findings *of fact,* not to conclusions of law. T.C.A., § 27–1–113. The ascertainment of the intention of the

parties to a written contract is a question of law, rather than a question of fact. *Oman Const. Co. v. Tennessee Cent. Ry. Co.,* 212 Tenn. 556, 370 S.W.2d 563 (1963); *Petty v. Sloan,* 197 Tenn. 630, 277 S.W.2d 355 (1955); *Rodgers v. Burnett,* 108 Tenn. 173, 65 S.W. 408 (1901).

We hold that the 1965 contract between the parties vested in the City of Morristown and its Board of Education the exclusive power to operate and administer the two high schools in question; the decrees of the Chancery Court and the Court of Appeals holding to the contrary are reversed and this cause is remanded to the trial court for such further proceedings as may be appropriate in the premises and not inconsistent with this opinion. Costs are taxed against Hamblen County and its Board of Education.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.

APPENDIX

CONTRACT

WHEREAS, the high school students residing in that portion of Hamblen County, lying outside of the corporate limits of the Town of Morristown, have heretofore attended Morristown High School, a high school owned, maintained and operated by the Town of Morristown, EXCEPT for those high school students living in the Eastern part of the county and attending Whitesburg High School, a high school owned, operated and maintained by Hamblen County.

WHEREAS the said arrangement has heretofore been for the mutual benefit of Hamblen County and the Town of Morristown, and without any tuition or compensation being paid to the Town of Morristown by Hamblen County.

WHEREAS Morristown High School has become overcrowded, and it is necessary to increase or add to the Morristown High School facilities in order to accommodate both the city high school students and the high school students residing in that portion of Hamblen County lying outside the corporate limits of Morristown.

WHEREAS it is mutually beneficial to Hamblen County and the Town of Morristown, and manifestly for the best interest of the high school students of the Town of Morristown and all of Hamblen County to construct a second high school and renovate the present high school for all the high school students of both the city and county.

The four governing bodies agreed to abide by the results of a county-wide referendum on August 5, 1965, in which election the voters voted in favor of a second high school and renovation of the present high school.

IT IS THEREFORE MUTUALLY AGREED BY THE QUARTERLY COUNTY COURT OF HAMBLEN COUNTY, HAMBLEN COUNTY BOARD OF EDUCATION, THE BOARD OF MAYOR AND ALDERMEN OF THE TOWN OF MORRISTOWN AND MORRISTOWN SCHOOL COMMISSION, AS FOLLOWS:

I

The high school students residing in that portion of Hamblen County lying outside the corporate limits of the Town of Morristown may attend Morristown High School during the school year of 1965–66 as they have heretofore been permitted to do, and until completion of the second high school.

II

The Quarterly County Court of Hamblen County has sold a Two Million Dollar Bond issue to provide the funds necessary to provide the additional land and construct the second high school and renovate the present high school. The said Two Million Dollar Bond issue are general obligation bonds of Hamblen County pursuant to the "County Recovery and Post War Aid Act of 1945" (Tennessee Code Annotated, Title 5, Section 1101 et seq.), as amended, and/or Section 49–701 Tennessee Code Annotated. The said bonds shall be payable with interest from ad valorem taxes assessed, levied and collected on all property subject to taxation,

including the property within the corporate limits of the Town of Morristown. The County Court will sell an additional bond issue to provide necessary funds to complete the project, in an amount not to exceed $750,000.00. If additional expenses are incurred in construction of said high school, these expenses will be financed in the same manner as hereunto set forth.

It is further agreed that the second high school involved in this contract have classroom facilities for 1400 students and service facilities for 2000 students.

It is also agreed that a new stadium seating approximately 10,000 people and with adequate parking facilities, and also track, located on a neutral site as concerning the two high schools, be a part of this contract.

The Board of Mayor and Aldermen of the Town of Morristown hereby waives and disclaims any interest in, or claim to, any part of the funds provided under Section 11 hereof. Provided, however all future additions to the two high schools made necessary by increased number of students shall be financed in the same manner as hereinabove set forth.

## IV

The Hamblen County Board of Education shall acquire by purchase or condemnation the additional land necessary for the aforesaid second High School title to which land shall be made to Hamblen County. And the said land shall be leased to the Town of Morristown for such time and *so long as* the same is used for educational purposes for city and county students.

## V

Construction of the second high school and renovation of the present high school, EXCEPT acquisition of land, shall be under the supervision and direction of the Board of Mayor and Aldermen of the Town of Morristown and Morristown School Commission. Payment for said construction and other features of the plan shall be made by the Trustee of Hamblen County only upon

County School Warrant duly signed and issued by the Hamblen County School Board, and no warrant for such payment of construction expenses shall be issued EXCEPT upon order in writing issued by the architect and approved and signed by the Board of Mayor and Aldermen of the Town of Morristown, or its duly authorized agent. However, without any order in writing, the Trustee is authorized to pay, upon County School Warrants duly signed and issued by the Hamblen County School Board, the following bills:

| | |
|---|---|
| Secretarial Expense | $165.00 |
| Election Commission Expense | 15.00 |
| Printing Referendum Ballots | 72.00 |

## VI

Beginning with the school year 1966–67 and thereafter, the high school students residing in that portion of Hamblen County lying outside the corporate limits of the Town of Morristown shall have the right to attend either high school, according to a zone plan approved by Morristown School Commission. In consideration for such services, Hamblen County or Hamblen County School Board shall pay to the Morristown School Commission or the Town of Morristown, for each such high school student so attending Morristown High Schools, a sum of money equal to their proportionate share of the expenditures of local supplementary funds required per child to operate the Morristown High School Systems over and above the amount provided by State and county under the minimum program required by the State. Said payment to be made monthly based on previous year's experience, and adjusted as soon as practical after the end of each school year.

## VII

The Morristown School Commission, consulting the University School Planning Laboratory, will furnish detailed plans and specifications for the aforesaid second high school and renovation of the present high school to the Hamblen County Board of Education. The expense in connection with furnishing the said plans will be paid from

the funds hereinbefore provided for, and in the manner hereinabove set forth.

The second high school and renovation plans and specifications will be approved by the Morristown School Commission and Hamblen County Board of Education subject to the approval of the State Department of Education. This contract is binding and irrevocable between the Board of Mayor and Aldermen of the Town of Morristown, Morristown School Commission, the Quarterly Court of Hamblen County and the Hamblen County Board of Education.

### VIII

The interest of the Whitesburg High School tenure teachers will be protected the same as tenure teachers of the present Morristown High School, and accumulated sick leave days will be honored by the Morristown School Commission.

This agreement accepted and adopted by The Board of Mayor and Aldermen of the Town of Morristown on September 7, 1965, in regular session, and executed in duplicate for and on behalf of the Town of Morristown by the Mayor and recorder of the Town of Morristown by the Mayor and Recorder of the Town of Morristown on this September 9, 1965.

THE BOARD OF MAYOR
AND ALDERMEN OF THE
TOWN OF MORRISTOWN
By (signed)
 C. FRANK DAVIS,
 MAYOR OF THE TOWN
 OF MORRISTOWN

ATTESTED:
(signed)
CHARLES E. SMITH, RECORDER
OF THE TOWN OF MORRISTOWN

This agreement accepted and adopted by the Morristown School Commission on September 3, 1965, in called session, and executed in duplicate for and on behalf of Morristown School Commission on this September 9, 1965, by the Chairman of the Morristown School Commission.

MORRISTOWN SCHOOL
COMMISSION
By (signed)
 CHAIRMAN

This agreement accepted and adopted by the Hamblen County Board of Education on September 7, 1965, in a special called session, and executed in duplicate for and on behalf of the Hamblen County Board of Education on this the 9th day of September, 1965, by the Chairman of the Hamblen County Board of Education.

HAMBLEN COUNTY
BOARD OF EDUCATION
By (signed)
 CHAIRMAN

This contract proposed and adopted by the Quarterly Court of Hamblen County on September 14, 1965, in special called session, and executed in duplicate for and on behalf of Hamblen County by the Chairman of the County Court and the County Court Clerk on this September 14, 1965.

HAMBLEN COUNTY
By (signed)
 E.B. FISHER, CHAIRMAN
 OF THE COUNTY COURT

ATTESTED:

By (signed)
 CLERK, HAMBLEN COUNTY
 COURT