IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 19, 2018 Session

## APRIL DORIS SCHMIDT v. AARON ERROL ANKROM

**Appeal from the Circuit Court for Bradley County
No. V-14-312 Lawrence H. Puckett, Judge**

_____

### No. E2017-01909-COA-R3-CV

_____

In this appeal, the marital dissolution agreement at issue stated the parties' intent to enter into a separate farm lease agreement for up to 7 years, upon completion of which the ex-wife could sell the property subject to the ex-husband's right of first refusal. However, the parties never entered into the contemplated farm lease. The ex-wife, desiring to sell the property prior to the passing of 7 years, brought a declaratory judgment action seeking a declaration of the rights of the parties under the marital dissolution agreement. The trial court held that the ex-wife would be in breach of the agreement if she sold the property prior to 7 years and awarded attorney's fees to the ex-husband. The ex-wife appeals. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Adam U. Holland, Chattanooga, Tennessee, for the appellant, April Doris Schmidt.

Andrew J. Brown, Cleveland, Tennessee, for the appellee, Aaron Errol Ankrom.

### OPINION

### I.      BACKGROUND

The parties were divorced by a Final Decree on July 15, 2014. The decree referenced and incorporated an agreed upon Marital Dissolution Agreement ("MDA"). This MDA awarded certain real property to April Doris Schmidt ("Schmidt" or "Wife"), situated in Cleveland, Tennessee, provided that the parties entered into a separate rental agreement allowing Aaron Errol Ankrom ("Ankrom" or "Husband") to "farm, raise

crops, and livestock for up to (7) seven years." Upon completion of such farm lease, Schmidt might sell the property, subject to Ankrom's right of first refusal.

The contractual language in the MDA at the center of this dispute reads as follows:

> The parties agree the real property situated [in Cleveland] shall be awarded to Wife free and clear of claims by Husband. Husband and Wife will enter into a separate rental agreement allowing the Husband to farm, raise crops and livestock for up to (7) seven years. Wife shall be allowed to claim the mortgage interest and taxes on the property for the tax years 2014 and thereafter. Upon entry of the Final Decree, Husband shall execute a Quitclaim Deed to be prepared by Husband which transfers his interest in this property to Wife. Wife shall be responsible for payment of all costs associated with preparing and recording the Quitclaim Deed. Wife shall be responsible for the mortgage, taxes and insurance on the property, holding the other harmless for the same. Husband during the term of the rental agreement shall have use of the property and agrees to maintain the property.
>
> After seven (7) years, Should (sic) Wife elect to sell the property, Husband shall have the option of the first refusal regarding the purchase. If the parties cannot agree on a sales price, the property shall be appraised by a professional property appraiser and the appraisal shall set the sales price. Husband is not obligated to purchase the property. Wife agrees to pay the upcoming taxes and insurance on this property that will be due later in 2014 and thereafter.

The MDA also provided the following Enforcement provision:

> In the event it becomes reasonably necessary for either party to institute or defend legal proceedings relating to the enforcement of any provision of this Agreement, the successful party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection with such proceedings.

Upon the conclusion of the parties' divorce, Ankrom quitclaimed his interest in the property to Schmidt via a quitclaim deed. However, the parties did not subsequently enter into a farm lease as contemplated. The record reveals that Husband demonstrated

no intention to farm the property. Schmidt, desiring to sell the property prior to 7 years elapsing, brought an action for declaratory judgment to declare the farm lease provision and attendant 7-year purchase option unenforceable as a matter of law.

At a hearing on Schmidt's motion for partial summary judgment and Ankrom's motion for summary judgment, the trial court found in favor of Ankrom, holding that he had a right of first refusal to purchase the property for 7 years from the date the parties' executed the MDA and that selling the property prior to that time would result in a breach of the agreement. Schmidt timely filed this appeal.

## II.    ISSUES

We consolidate and restate the issues raised on appeal by Schmidt as follows:

A.      Whether the contractual language awarding Ankrom a 7-year purchase option was valid and enforceable when the parties did not subsequently enter into the contemplated farm lease.

B.      Whether Ankrom was entitled to recover reasonable attorney's fees and costs as the prevailing party in a declaratory judgment action pursuant to the enforcement provision of the MDA.

## III.    STANDARD OF REVIEW

Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion-that the moving party is entitled to a judgment as a matter of law." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Griffis v. Davidson Cnty. Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005)); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *see* Tenn. R. Civ. P. 56.04. "Questions of contract interpretation are generally considered to be questions of law, and thus are especially well-suited for resolution by summary judgment." *Ross Products Div. Abbott Labs. v. State*, No. M2006-01113-COA-R3-CV, 2007 WL 4322016, at *2 (Tenn. Ct. App. Dec. 5, 2007) perm. app. denied (Tenn. Apr. 28, 2008) (citing *Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001)); *Campora v. Ford*, 124 S.W.3d 624, 628 (Tenn. Ct. App. 2003); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999); *Hamblen Cnty. v. City of Morristown*, 656 S.W.2d 331, 335-36 (Tenn. 1983). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Bourland, Heflin, Alvarez, Minor & Matthews, PLC v. Heaton*, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012) (citing *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)). "We are required to review the evidence in the light most favorable to the

3

nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Martin*, 271 S.W.3d at 84 (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

## IV.   DISCUSSION

### A.

#### i.      Intent of the Parties

A marital dissolution agreement "is a contract and as such generally is subject to the rules governing construction of contracts." *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). As such, MDAs have been found to be valid and enforceable contracts between the parties. *Barnes v. Barnes*, 193 S.W.3d 495, 498 (Tenn. 2006). Interpretation of an MDA is subject to the rules of construction governing contracts:

> The resolution of this issue involves the interpretation of the parties' MDA. An MDA is contractual in nature and is binding between the parties; therefore, the interpretation of the MDA is "subject to the rules governing construction of contracts."

*Minor v. Nichols*, No. W2012-01720-COA-R3-CV, 2014 WL 356508, *5 (Tenn. Ct. App. 2012) (citing *Barnes*, 193 S.W.3d at 498). "Each provision of an MDA should be construed in light of the entire MDA, and the language in these provisions should be given its natural and ordinary meaning." *Minor*, 2014 WL 356508 at *5 (citing *Elliott v. Elliott*, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004)).

The parties stipulated and the trial judge held that the terms of the disputed provisions are not ambiguous. An unambiguous contract must be interpreted as written "and not in accordance with a party's unexpressed intent." *Pitt v. Tyree Org., Ltd.*, 90 S.W.3d 244, 252 (Tenn. Ct. App. 2002). "Where the contract's language is clear and unambiguous, the agreement is to be given effect according to its terms, and 'the court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence.'" *Bourland, Heflin, Alvarez, Minor & Matthews, PLC*, 393 S.W.3d at 676 (citations omitted). "When the language of the MDA is plain and unambiguous, courts determine the intent of the parties from the four corners of the contract and enforce its plain terms as written." *Minor*, 2014 WL 356508 at *6; *see Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000).

The court does not attempt to ascertain the parties' state of mind at the time the contract was executed but rather the parties' intentions as "actually embodied and

expressed in the contract as written." *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992). For this reason, we do not look to the testimony of the parties as to the reason for inserting the 7-year purchase option into the MDA but instead look no further than the four corners of the MDA.

"All provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract." *Guiliano*, 995 S.W.2d at 95. Construing the contract as a whole, as we are required to do, we find that the 7-year purchase option was tied to the farm lease contemplated by both parties. Obviously, the parties intended entering a farm lease prior to the Wife selling the property. Here, the provision states: "Husband and Wife will enter into a separate rental agreement allowing the Husband to farm, raise crops and livestock for up to (7) seven years." There is no serious debate as to the meaning of this provision. It is clear, unambiguous, and susceptible to only one interpretation. The provision continues that "after seven (7) years, Should (sic) Wife elect to sell the property, Husband shall have the option of the first refusal regarding the purchase." This second provision gives the Husband a purchase option at the conclusion of the farm lease. The parties not having subsequently entered into the contemplated farm lease, the 7-year restriction is left orphaned. Separating these provisions therefore creates an ambiguity as to the running of the option. Such interpretation ignores that the parties intended to first enter into a farm lease.

Significantly, the MDA makes no provision for the parties not entering into a farm lease. There is no provision stating that Schmidt cannot sell the property prior to 7 years, only that "[a]fter seven years, Should (sic) Wife elect to sell the property, Husband shall have the option of the first refusal regarding the purchase." Giving the language of the provision its usual and ordinary meaning, it is obvious that the parties intended for Schmidt to be free to sell it, subject to Ankrom's right of first refusal. Construing the contract as a whole, it appears to this court that the parties intended that Ankrom have the right of first refusal once a farm lease was no longer in the picture. It is uncontroverted that the parties did not subsequently enter into the contemplated farm lease, so Schmidt will not be in breach of contract for selling the property, as long as she gives Ankrom the right of first refusal.

The intent of the parties within the four corners of the document reveals that the parties intended Ankrom to have a right of first refusal once Schmidt was free to sell the property. Considering how the law abhors restrictions on alienation, we reverse the trial court's holding restricting Schmidt from selling the property prior to June 26, 2021. Schmidt may sell the property at any time, but Ankrom's right of first refusal stands intact.

### ii. Agreement to Agree Provision

The contract provision that the parties would enter into a separate farm lease agreement stipulates an agreement to agree, a provision unenforceable as a matter of law. It is well settled in contract law that mere agreements to agree are not enforceable. *Four Eights, LLC v. Salem*, 194 S.W.3d 484, 485-87 (Tenn. Ct. App. 2005); *see Engenius Entm't, Inc. v. Herenton*, 971 S.W.2d 12, 17-18 (Tenn. Ct. App. 1997).

The trial court correctly held that the farm lease provision is unenforceable as a matter of law, as the courts cannot enforce an agreement to agree, but the court erred in finding that the 7-year purchase option is valid and enforceable apart from the parties entering into the contemplated farm lease. Ankrom contends that the provision allows him to enter into a farm lease for any duration, from one day up to 7 years. There is nothing in the MDA specifying from what date the 7 years begins to run. A contract for future action must specify all material and essential terms. *Four Eights*, 194 S.W.3d at 487. The MDA at issue sets out no definite terms, dates, prices, or duration, other than the requirement that the lease extends up to 7 years, with an option for Husband to purchase after 7 years. We find that the provision is unenforceable because of its uncertainty, vagueness, and its reference to future action without sufficiently definite terms.

### B.

The American Rule is well-established for the award of attorney's fees, and parties are generally responsible for their own attorney's fees. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 194 (Tenn. 2000). One exception to the rule, however, is that a party may recover attorney's fees when a contractual provision creates a right to recover such fees. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Accordingly, prevailing parties are entitled to recover their reasonable attorney's fees to enforce their contractual rights. *Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 309.

The parties' MDA Enforcement provision provides:

> In the event it becomes reasonably necessary for either party to institute or defend legal proceedings relating to the enforcement of any provision of this Agreement, the successful party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in connection with such proceedings.

We have previously held that when an MDA provision mandates an award of attorney's fees to the prevailing party, the courts do not have discretion to deny such an award. *See,*

6

*e.g.*, *Eberbach v. Eberbach*, 535 S.W.3d 467, 476 (Tenn. 2017); *Beem v. Beem*, No. W2009-00800-COA-R3-CV, 2010 WL 1687782, at *9-10 (Tenn. Ct. App. 2010).

Schmidt contends that an award of attorney's fees to Ankrom in this action is inappropriate because her action was not to enforce the MDA, but rather sought a declaratory judgment on the rights of the parties under the MDA. The parties' MDA states that the successful party is entitled to a judgment for reasonable attorney's fees and costs in any action brought "relating" to enforcement of any MDA provision. Schmidt's counsel points to *New Covenant Baptist Church v. Sark*, No. E2002-02693-COA-R3-CV, 2003 WL 21544248, *1 (Tenn. Ct. App. 2003), where we reversed an award of attorney's fees, finding that a close reading of the language in the underlying contract awarded attorney's fees solely in actions to "enforce" the agreement.

The MDA at issue provides an award of attorney's fees and costs to the prevailing party in any action "relating" to the enforcement of any provision of the MDA; as such, the parties' enforcement provision is broader than the contractual language in *New Covenant*. While an action for declaratory judgment is not an action to enforce the MDA, such action does "relate" to the enforcement of the MDA. The contractual language in the parties' MDA is different from the narrow language in the underlying contract in *New Covenant* and is therefore distinguishable. In this case, however, because we reverse the trial court below and allow Schmidt to sell the property, costs and attorney's fees are awarded to Schmidt as the prevailing party. We remand the case to the trial court to establish the amount of reasonable attorney's fees.

## V.    CONCLUSION

We reverse the decision of the trial court and remand this cause for all further proceedings as may be necessary and consistent with this opinion. The costs of this appeal are assessed to the appellee, Aaron Errol Ankrom.

_____
JOHN W. MCCLARTY, JUDGE